1  JOHN L. BURRIS, Esq./ State Bar #69888
   BENJAMIN NISENBAUM, Esq./State Bar #222173
2  LAW OFFICES OF JOHN L. BURRIS
   Airport Corporate Centre
3  7677 Oakport Street, Suite 1120
   Oakland, California 94621
4  Telephone: (510) 839-5200
   Facsimile:  (510) 839-3882
5

6  MICHAEL J. HADDAD, Esq./ State Bar #189114
   JULIA SHERWIN, Esq./ State Bar #189268
7  HADDAD & SHERWIN
   505 Seventeenth Street
8  Oakland, CA 94612
   Telephone: (510) 452-5500
9  Facsimile:  (510) 452-5510

10
   Attorneys for Plaintiffs
11

12              UNITED STATES DISTRICT COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14

15  JOHN SMITH; ROBERT DAVIS; MEHERET          Case No. C07-06298
    ANETENEH; KIRBY BRADSHAW;
16  SPENCER LUCAS; JAMEL PARRISH;              COMPLAINT FOR DAMAGES FOR
    YUSEF MORRIS; ELBERT OWENS;                VIOLATION OF CIVIL RIGHTS.
17  RAHEEM HILL; SHERMAN DUNN,                 JURY TRIAL DEMANDED

18
           Plaintiffs,
19
       vs.
20
21  CITY OF OAKLAND, a municipal corporation;
    WAYNE TUCKER, in his capacity as Chief of
22  Police for the CITY OF OAKLAND; J.
    KOSTER, , individually and in his capacity as a
23  police officer for the CITY OF OAKLAND;
    BROWN, individually and in his capacity as a
24  police officer for the CITY OF OAKLAND;  E.
    FRAZIER, individually and in his capacity as a
25  police officer for the CITY OF OAKLAND;  R.
    HOLTON, individually and in her capacity as a
26  police officer for the CITY OF OAKLAND;
    MAYER, individually and in his capacity as a
27  police officer for the CITY OF OAKLAND; T.
28  BERGERON, individually and in his capacity as

1  a police officer for the CITY OF OAKLAND; B.
2  BURKE, individually and in his capacity as a
   police officer for the CITY OF OAKLAND; J.
3  FOREMAN, individually and in his capacity as a
   police officer for the CITY OF OAKLAND; L.
4  LEONIS, individually and in her capacity as a
5  police officer for the CITY OF OAKLAND; S.
   BOWLING, individually and in his capacity as a
6  police officer for the CITY OF OAKLAND; T.
   GODFREY, individually and in his capacity as a
7  police officer for the CITY OF OAKLAND; S.
8  TITH, individually and in his capacity as a
   police officer for the CITY OF OAKLAND; M.
9  MARTINEZ, individually and in his capacity as
   a police officer for the CITY OF OAKLAND;
10 M. MILLER, individually and in his capacity as
11 a police officer for the CITY OF OAKLAND; C.
   JOHNSON, individually and in his capacity as a
12 police officer for the CITY OF OAKLAND:
   CRABTREE, individually and in his capacity as
13 a police officer for the CITY OF OAKLAND
14 and, DOES 1-25, inclusive,

15                 Defendants.
16 _____ /

17                    JURISDICTION

18     1.     This action arises under Title 42 of the United States Code, Section 1983. Jurisdiction

19 is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343. The

20 unlawful acts and practices alleged herein occurred in the County of Alameda, California, which is

21 within this judicial district.

22                      PARTIES

23     2.     Plaintiff herein, fictitiously named herein as JOHN SMITH ("SMITH"), is readily

24 recognizable as an African-American male and was at all times herein mentioned a citizen of the

25 United States residing in Alameda County in California.

26     3.     Plaintiff herein, ROBERT DAVIS ("DAVIS"), is readily recognizable as an African-

27 American and was at all times herein mentioned a citizen of the United States residing in Alameda

28 County in California.

4.    Plaintiff herein, MEHERET ANETENEH ("ANETENEH"), is readily recognizable as an African-American and was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

5.    Plaintiff herein, KIRBY BRADSHAW ("BRADSHAW"), is readily recognizable as an African-American and was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

6.    Plaintiff herein, SPENCER LUCAS ("LUCAS"), is readily recognizable as an African-American and was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

7.    Plaintiff herein, JAMEL PARRISH ("PARRISH"), is readily recognizable as an African-American and was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

8.    Plaintiff herein, YUSEF MORRIS ("MORRIS"), is readily recognizable as an African-American and was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

9.    Plaintiff herein, ELBERT OWENS ("OWENS"), is readily recognizable as an African-American and was at all times herein mentioned a citizen of the United States residing in Alameda County in California

10.    Plaintiff herein, RAHEEM HILL ("HILL"), is readily recognizable as an African-American and was at all times herein mentioned a citizen of the United States residing in Alameda County in California

11.    Plaintiff herein, SHERMAN DUNN ("DUNN"), is readily recognizable as an African-American and was at all times herein mentioned a citizen of the United States residing in Alameda County in California

9.    Defendant City of Oakland ("CITY") is a municipal corporation, duly organized and existing under the laws of the State of California. The City operates under its authority the Oakland Police Department.

10.    At all times mentioned herein, Defendant WAYNE TUCKER ("TUCKER") was employed by Defendant CITY as Chief of Police for the Defendant CITY. He is being sued in his official capacity as Chief of Police for the City.

11.    At all times mentioned herein, Defendant officer J. KOSTER ("KOSTER") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

12.    At all times mentioned herein, Defendant officer (First Name Unknown) BROWN ("BROWN") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

13.    At all times mentioned herein, Defendant officer E. FRAZIER ("FRAZIER") was employed by Defendant CITY as a police officer. She is being sued individually and in her official capacity as a police officer for the City.

14.    At all times mentioned herein, Defendant officer R. HOLTON ("HOLTON") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

15.    At all times mentioned herein, Defendant officer (First Name Unknown) MAYER ("MAYER") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

16.    At all times mentioned herein, Defendant officer T. BERGERON ("BERGERON") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

17.    At all times mentioned herein, Defendant officer B. BURKE ("BURKE") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

18.    At all times mentioned herein, Defendant officer J. FOREMAN ("FOREMAN") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

19.    At all times mentioned herein, Defendant officer L. LEONIS  ("LEONIS") was employed by Defendant CITY as a police officer. She is being sued individually and in her official capacity as a police officer for the City.

20.    At all times mentioned herein, Defendant officer S. BOWLING  ("BOWLING") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

21.    At all times mentioned herein, Defendant officer T. GODFREY ("GODFREY") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

22.    At all times mentioned herein, Defendant officer S. TITH ("TITH") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

23.    At all times mentioned herein, Defendant officer M. MARTINEZ ("MARTINEZ") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

24.    At all times mentioned herein, Defendant officer M. MILLER ("MILLER") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

25.    At all times mentioned herein, Defendant officer C. JOHNSON ("JOHNSON") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

26.    At all times mentioned herein, Defendant officer (First Name Unknown) CRABTREE ("CRABTREE") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

27.    Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 50, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the

injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of DOES 1-50, inclusive, when they have been ascertained.

28.     In engaging in the conduct described herein, Defendant police officers acted under the color of law and in the course and scope of their employment with the City. In engaging in the conduct described herein, Defendant police officers exceeded the authority vested in them as police officers under the United States and California Constitutions and as police officers employed by Defendant CITY.

29.     Plaintiffs are required to comply with a government code claim requirement for State causes of action. Plaintiffs BROWN and ANETENEH have complied with all requirements.

30.     For cause of action accruing more than two years before the filing of the instant complaint, Plaintiffs allege that such Plaintiffs are putative class members in the related case *Foster, et al. v. City of Oakland, et al.* case no. C 05-3110 MHP, which tolled the statutes of limitations for putative class-members pursuant to law.

## STATEMENT OF FACTS

### FACTUAL ALLEGATIONS REGARDING PLAINTIFF JOHN SMITH

31.     On May 8, 2007, at about 9:00 p.m., Plaintiff JOHN SMITH, then a 35 year old African American male who works locally as a welder, and a friend named Fidela Arrizon, ate dinner at the Crabshack, a restaurant located on Broadway near 40th Street in Oakland, California. Plaintiff and Ms. Arrizon enjoyed their meal at the Crabshack and left about an hour later after they arrived. Plaintiff and Ms. Arrizon intended to spend the night at the nearby Broadway Motel. They stopped briefly at a 7-11 store that was also nearby.

32.     After leaving the 7-11 store, Plaintiff and Ms. Arrizon were suddenly stopped by about four Oakland Police Department officers, who were on foot, near the Broadway Motel. One Oakland Police Department patrol vehicle had been parked at the 7-11 store parking lot. Plaintiff recognized two of the Oakland Police Department Officers, Defendant Officers KOSTER and BROWN. Plaintiff has been repeatedly stopped and searched by Defendant Officers KOSTER and BROWN over the years. On several occasions, Defendant Officers KOSTER and BROWN have conducted public strip searches of Plaintiff. Also present were Defendant Officers FRAZIER and HOLTON

33.     Defendant Officers KOSTER and BROWN, who are male police officers, searched Ms. Arrizon by conducting a pat search, and then physically reaching into Ms. Arrizon's underwear. Defendant Officers FRAZIER and HOLTON, handcuffed Plaintiff and walked Plaintiff to a patrol vehicle. One of the officers used O.C. spray against Plaintiff and then placed him in the rear of the patrol vehicle.

34.     Defendant Officers KOSTER and BROWN then entered the rear of the police vehicle where Plaintiff was detained. Defendant Officer KOSTER, who in prior encounters with Plaintiff had been an aggressor, continued the pattern by putting his hand against Plaintiff's throat and ordering Plaintiff to "Spit it out!"   Defendant Officer KOSTER wore a pair of latex gloves.

35.     Plaintiff wore jeans that were held up by a piece of string that acted as a belt. Defendant Officer KOSTER applied pressure against Plaintiff's throat. Plaintiff heard Defendant Officer BROWN say: "Search his ass!" Defendant Officer BROWN laughed as he put on a pair of latex gloves.

36.     Two defendant officers held Plaintiff down in the back of the patrol car while Defendant Officer BROWN pulled Plaintiffs jeans and boxer shorts down. Plaintiff had no contraband.

37.     Plaintiff BROWN felt a hand being run up and down the crack between his buttocks, and heard an officer say: "He's got it in his ass." At this point several of the officers present laughed at Plaintiff.

38.     Defendant Officer KOSTER then penetrated Plaintiff's anus, moving an object, likely his finger, in and out of Plaintiff's anus approximately three times in succession. Defendant Officer KOSTER told Plaintiff: "Didn't I say I was going to fuck you? I'm fucking you now." Defendant Officer KOSTER laughed as he spoke to Plaintiff.

39.     Plaintiff's eyes burned from the O.C. spray. Plaintiff suffered severe pain from violent penetration of his body cavity, which caused rectal bleeding. Plaintiff passed out in the back of the police vehicle. When Plaintiff awoke, he found himself in jail. Plaintiff possessed no contraband, and the strip search produced no contraband.

40.    After Plaintiff awoke, he told one of the jailors that he needed medical assistance. Plaintiff told the jailor of the penetration and sexual battery he had endured at the hands of the defendant officers. Plaintiff also told a nurse at Santa Rita jail about the bleeding from his rectum. Plaintiff had subsequently been transferred to Santa Rita jail. The bleeding stopped after about three days.

41.    Plaintiff was released from jail about twenty days after the arrest.

42.    Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause, pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

## FACTUAL ALLEGATIONS REGARDING PLAINTIFF ROBERT DAVIS

43.    In early to mid 2004, Plaintiff ROBERT DAVIS was stopped by Oakland Police Officers in a black, unmarked "task force" vehicle while on 23rd Street near the 980 Freeway. Two uniformed Oakland Police officers, Defendant Officer DOES 1 and 2, both white males, exited the task force vehicle, grabbed Plaintiff, and handcuffed him. One of the two officers asked Plaintiff whether he was on probation or parole, and where the "dope" was. Plaintiff admitted that he was on parole, but told the officers that he did not have any "dope."

44.    The officers put Plaintiff in the rear of their police vehicle. A car with several people inside was parked next to the task force vehicle, and the officers made the driver move the vehicle. When the vehicle moved, one officer appeared to discover a piece of a rock of cocaine on the ground. The officers questioned Plaintiff about the suspected rock cocaine, and Plaintiff denied any knowledge of it. The officers then searched Plaintiff's coat, and located drug paraphernalia consisting of a pipe in one of Plaintiff's coat pockets.

45.    The two Defendant Officers then removed Plaintiff from the police vehicle. The police vehicle was parked parallel to the sidewalk, and the two Defendant Officers ordered Plaintiff to stand in the "v" of the open back door in between the sidewalk and the street. Plaintiff wore boxer shorts, sweat pants, a t-shirt and a coat. One Defendant Officer held Plaintiff while the other Defendant Officer pulled Plaintiffs sweat pants and boxer shorts down in the same motion.

46.    Plaintiffs genitals and buttocks were exposed for approximately five to ten seconds. The two Defendant Officers did not touch Plaintiff or order him to bend over. They observed him briefly, located no contraband, and then pulled his boxer shorts and pants back up.

47.    One witness observed the conduct of Defendant Officers, and the officers ordered that person to leave the area.

48.    The officers ordered Plaintiff to sit on the back seat of the rear of the police vehicle and removed Plaintiff's shoes. This search revealed no contraband. The officers put Plaintiff's shoes back on his feet and then transported Plaintiff to jail.

49.    One late summer night, around August 2004, at about 10 p.m., Plaintiff was near the intersection of 22nd and West Streets in Oakland, California, returning on foot from a nearby Quarter-Pounder, when he was stopped by a marked Oakland Police Department patrol vehicle containing two Oakland Police Department officers (Defendant Officers DOES 3 and 4). The officers asked Plaintiff for his identification. Plaintiff had none and told the officers as much.

50.    Defendant Officers handcuffed Plaintiff and pat-searched him. The search revealed two glass pipes and one pipe used for smoking marijuana. The officers set the pipes on their police vehicle and asked Plaintiff if he was on probation or parole. Plaintiff admitted that he was on probation. Defendant Officers placed Plaintiff in the rear of their patrol vehicle. Plaintiff's friend was also placed in the rear of the patrol vehicle.

51.    The officers looked into the box and discovered another person hiding in the box. That person was also handcuffed and placed in the rear of the patrol vehicle. The officers examined the box and discovered a significant amount of marijuana. The officers asked who the marijuana belonged to and Plaintiff denied that it was his. As Plaintiff noted, he was the only one of the three people detained who was not inside the box.

52.    Defendant Officers DOES 3 and 4 told Plaintiff that he was going to jail. They took Plaintiff behind the rear of their police vehicle and removed the handcuffs from one wrist. The officers then ordered Plaintiff to pull his pants down. Plaintiff complied with the officers' command and pulled his pants down to his thighs, exposing his genitals. Defendant Officers DOES 3 and 4 used their flashlights, shining the lights upon Plaintiffs genitals and buttocks. Plaintiff possessed no

contraband, and no contraband was located on Plaintiff's person. Plaintiff was exposed for approximately ten to fifteen seconds before the officers allowed him to pull his pants back up. Plaintiff was then placed in the rear of the police vehicle. Neither of the other two subjects arrested with Plaintiff were subsequently searched at the scene. All were arrested and transported to Oakland City Jail.

53.     Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

FACTUAL ALLEGATIONS REGARDING PLAINTIFF MEHERET ANETENEH

54.     On the evening of January 4, 2007, Plaintiff MEHERET ANETENEH and two friends were near 51st and Bancroft Street in Oakland, California, using one of the friend's electric scooters. Plaintiff and his friends took turns riding the scooter up and down the block. Plaintiff and his friends had noticed numerous Oakland Police Department unmarked "task force" vehicles patrolling that area of Bancroft Avenue throughout the day; However, Plaintiff and his two friends had no contact with any officers until early that evening, when one task force vehicle pulled up to Plaintiff as Plaintiff counted some money he had in his possession.

55.     Plaintiff fled from the task force vehicle onto Bancroft Street toward 52nd Avenue. Plaintiff cut through several yards, rounded a corner, and came face to face with a white male Oakland police officer, Defendant Officer DOE #6, who held a hand-gun pointed directly at Plaintiff. Plaintiff stopped immediately. The officer struck Plaintiff on the side of the head, knocking Plaintiff to the ground. Two other Oakland Police officers arrived at the scene. Defendant Officer DOE #7 was an African-American male. Defendant Officer DOE #8 was a Latino male. Two of the defendant officers kicked Plaintiff in the ribs, but another Defendant Officer DOE intervened and stopped the other officers from continuing to kick Plaintiff.

56.     The Defendant Officers picked Plaintiff up off the ground and handcuffed him. They asked Plaintiff if he had "anything" on him. Plaintiff accurately told the officers that the only thing he had was some money. The officers then held Plaintiff against a wall and unzipped Plaintiff jacket. The officers pulled Plaintiff's shirt up to his chest and found no contraband.

57.     Plaintiff also wore a pair of jeans, over a pair of sweat pants, over a pair of basketball shorts, over a pair of boxer shorts. The three Defendant Officer DOES searched Plaintiff's jean pockets and found no contraband. The officers pulled Plaintiff's jeans down and searched Plaintiff's sweat pants. This search also revealed no contraband. Defendant Officer DOES then pulled Plaintiff's sweat pants and boxer shorts away from Plaintiff's body, exposing Plaintiff's genitalia. This search also revealed no contraband. The search lasted several minutes, after which Plaintiff was arrested and transported to jail.

58.     Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

## FACTUAL ALLEGATIONS REGARDING PLAINTIFFS KIRBY BRADSHAW AND SPENCER LUCAS

59.     On December 15, 2005, at about 8:00 a.m., Plaintiffs KIRBY BRADSHAW and SPENCER LUCAS drove in a 1972 gold Cadillac near the intersection of 32nd and West Street. Two other friends were passengers. Plaintiff LUCAS, who was on parole, drove the Cadillac when they were stopped by approximately three unmarked police vehicles. The police vehicles contained approximately eight Oakland Police Department officers, including Defendant Officer MAYER, one parole agent, one probation officer, and one federal agent.

60.     According to the Department of Corrections report prepared by Agent S. Nakamura, Defendant Officer MAYER conducted a traffic stop of the gold Cadillac driven by Plaintiff LUCAS. Agent Nakamura noted no traffic violation at the time of the stop. Defendant Officer MAYER was working with Agent Nakamura as part of the "Police and Corrections Team' (PACT). There was no pursuit or attempted flight by anyone in the vehicle. Defendant Officer MAYER approached the driver's side of the vehicle and asked Plaintiff Lucas if he was on parole or probation. Plaintiff LUCAS identified himself and stated that he was on parole.

61.     Defendant Officer MAYER ordered Plaintiff LUCAS to step out of the Cadillac, and Plaintiff LUCAS complied. Defendant Officer MAYER then handcuffed Plaintiff LUCAS and asked him if he possessed any weapons or drugs. Plaintiff LUCAS accurately responded that he possessed

neither drugs nor weapons. While standing in the street behind the trunk of the Cadillac and in front of Defendant Officer MAYER's unmarked patrol vehicle, Defendant Officer MAYER conducted a pat-search of Plaintiff LUCAS. The search revealed no contraband or weapons.

62.     Defendant Officer MAYER then unbuckled Plaintiff LUCAS's belt, undid his pants, and pulled Plaintiff LUCAS's pants down to his knees, thereby exposing Plaintiff LUCAS's boxer shorts. Defendant Officer MAYER shook Plaintiff LUCAS's boxer shorts in the front and the back. Again, no contraband or weapons were recovered. Defendant Officer MAYER then pulled Plaintiff LUCAS's pants back up and placed Plaintiff LUCAS in the rear of his unmarked vehicle.

63.     Agent Nakamura was present during the search and contacted Plaintiff LUCAS's parole agent, who told Agent Nakamura that Plaintiff LUCAS had been doing "fine" on parole. Plaintiff LUCAS was subsequently transported to jail after the officers alleged that Plaintiff LUCAS did not have an up to date parole address and allegedly had access to a simulated firearm.

64.     Plaintiff KIRBY BRADSHAW was a passenger in Plaintiff LUCAS's gold Cadillac, along with a third person, when they were stopped by Defendant Officer MAYER and Agent Nakamura on December 15, 2005. Plaintiff KIRBY was not on probation or parole at the time of the incident. Plaintiff BRADSHAW was detained by Defendant Officer MAYER and stood next to Plaintiff LUCAS when Plaintiff LUCAS was strip-searched by Defendant Officer MAYER. After Plaintiff LUCAS was strip-searched, Defendant Officer MAYER strip searched Plaintiff BRADSHAW by pulling Plaintiff BRADSHAW's pants down to his ankles. Plaintiff BRADSHAW was not handcuffed at this time.

65.     Defendant Officer MAYER then shook Plaintiff BRADSHAW boxer shorts in the same manner as he had done to Plaintiff LUCAS. No contraband or weapons were located. However, Plaintiff BRADSHAW was arrested on an unrelated warrant and transported to Oakland City Jail.

66.     Plaintiffs allege on information and belief that defendant officers performed the intrusive public strip-searches without probable or reasonable cause, pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

FACTUAL ALLEGATIONS REGARDING PLAINTIFF JAMEL PARRISH

67.    On January 7, 2004, after midnight Plaintiff JAMEL PARRISH was in the area of 3300 Chestnut Street in Oakland, CA. Plaintiff PARRISH and a friend were smoking a marijuana cigarette when Defendant Officers T. BERGERON and B. BURKE stopped their marked Oakland Police Department vehicle. Plaintiff PARRISH is familiar with Defendant Officer BERGERON from previous adverse encounters with him. From these prior encounters, Plaintiff PARRISH had made Defendant Officer BERGERON aware that he smokes marijuana legally pursuant to a physician's recommendation.

68.    Defendant Officer BERGERON asked Plaintiff PARRISH if he was on parole or probation. Plaintiff PARRISH was clean, and he accurately told the officers that he was on neither probation nor parole. Defendant Officer BERGERON grabbed Plaintiff PARRISH and told him that he was "about to be" on probation or parole.

69.    Plaintiff PARRISH dropped the marijuana cigarette and asked Defendant Officer BERGERON why he was grabbing him. One of the defendant officers stomped on the cigarette and Defendant Officer BERGERON handcuffed Plaintiff. Defendant Officer BERGERON put on a pair of latex gloves and pulled Plaintiff's pants down. Defendant Officer BERGERON then acted as if he had found something by asking Plaintiff: "What's this?" Defendant Officer BERGERON claimed to find a bag containing several rocks of cocaine. Defendant Officer BERGERON later alleged in his police report of the incident that he observed the baggie through the open fly of Plaintiff's jeans. Plaintiff PARRISH was arrested and transported to Oakland City Jail. Plaintiff possessed no contraband on his person at the time of the search.

70.    Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause, pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

FACTUAL ALLEGATIONS REGARDING PLAINTIFF YUSEF MORRIS

71.    On October 3, 2003, at about 7:00 p.m., Plaintiff YUSEF MORRIS was arrested by Defendant Officers J. FOREMAN and L. LEONIS during a buy/bust marijuana sting operation in the

area of 73rd and Hamilton Avenues. Plaintiff was alleged to have sold two small bags of marijuana at $10 apiece to an undercover officer. At the time he was arrested, Plaintiff possessed less than $100 dollars, which was in his waistband. Several other people were arrested at about the same time and location as Plaintiff. Plaintiff was detained, in handcuffs, in the middle of the block, with several of the other people who were arrested.

72.    Defendant Officers FOREMAN and LEONIS walked Plaintiff MORRIS next to a car that was parked in a driveway blocking the sidewalk. Plaintiff observed a white female officer put on a pair of latex gloves. She was later identified in the police report of the incident as Defendant Officer LEONIS.

73.    One of the Defendant Officers undid Plaintiff's jeans and pulled Plaintiff's pants down to his knees. Defendant Officer LEONIS then pulled the back part of Plaintiff's boxer shorts down to his thighs, exposing Plaintiff's buttocks. Defendant Officer LEONIS then ran one of her gloved hands up and down the crack between Plaintiff's buttocks. No contraband was located during the search, and the officers pulled Plaintiffs pants and underwear back up before completing the arrest.

74.    Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

FACTUAL ALLEGATIONS REGARDING PLAINTIFF ELBERT OWENS

75.    On August 15, 2006, at around noon, Plaintiff ELBERT OWENS was detained by Defendant Officers R. HOLTON and S. BOWLING on 32nd Street between Martin Luther King, Jr. Way and West Street in Oakland, California. One of the Defendant Officers asked Plaintiff if he was on probation or parole. Plaintiff told the officers that he was on probation. Both Defendant Officers exited the patrol vehicle and conducted a pat search of Plaintiff's clothing. The officers alleged in their report of the incident that they located a three inch long suspected crack-pipe in Plaintiff's front right pocket.

76.    Plaintiff stood in the gutter between the police vehicle and the sidewalk while the defendant officers searched him. The defendant officers handcuffed plaintiff and opened the rear

door of their patrol vehicle. The opened door was next to the sidewalk, so that the defendant officers stood Plaintiff in the "v" of the open door.

77.    One of the Defendant Officers unfastened Plaintiff's belt, which held his jeans up. Plaintiff was not wearing underwear. After unfastening Plaintiff's belt, the officer pulled Plaintiff's pants down to his knees. The officers visually inspected Plaintiff by turning him around in the "v" of the car door and then pulled Plaintiff's pants back up and re-fastened his belt. No drugs were located and Plaintiff was released at the scene with a citation.

78.    Several days later, on or about August 19, 2006, Defendant Officer T. GODFREY and another unknown Defendant Officer S. TITH stopped and detained Plaintiff OWENS near the same area of Oakland, between West and Market Streets near MacArther Blvd. One of the defendant officers asked Plaintiff if he was on probation and Plaintiff acknowledged that he was on probation. The defendant officers then conducted a pat search of Plaintiff, and allegedly recovered two crack pipes from Plaintiff, including one from Plaintiff's right front pocket and one from Plaintiff's right sock.

79.    Defendant Officer GODFREY and Defendant Officer TITH then placed Plaintiff, who was not handcuffed, in the sidewalk gutter in the "v" of the open rear door in between the sidewalk and the patrol vehicle.

80.    The defendant officers ordered Plaintiff to pull his pants down and Plaintiff complied. Plaintiff was not wearing underwear. The strip search revealed no further contraband. After Plaintiff pulled his pants back up and fastened his belt, Defendant Officers had Plaintiff sit down on the back of their patrol vehicle while they ran a warrants check. Plaintiff had no warrants and he was released at the scene with a citation.

81.    Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause, pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

FACTUAL ALLEGATIONS REGARDING PLAINTIFF RAHEEM HILL

82.    On or about the night of September 30, 2004, Defendant Officer M. MARTINEZ and Officer P. Huppert detained Plaintiff RAHEEM HILL on the 800 block of 37th Street in Oakland,

California, after Plaintiff urinated in an alley between Market and West Streets. Plaintiff had dropped a friend off nearby, stopped in the alley, and returned to his truck when a marked Oakland Police Department vehicle pulled to a stop.

83.     One Defendant Officer, believed to be Defendant Officer MARTINEZ, exited the patrol vehicle, grabbed Plaintiff, and then handcuffed him. Plaintiff asked why the officer was detaining him, and Defendant Officer MARTINEZ told Plaintiff that he had received a call that Plaintiff urinated in public. Defendant Officer MARTINEZ asked Plaintiff if he had ever been arrested before, and Plaintiff admitted that he had been arrested in 2001 on a drug sales charge. Defendant Officer MARTINEZ handcuffed Plaintiff and placed him in the rear of his patrol vehicle.

84.     Defendant Officer MARTINEZ asked Plaintiff who owned the truck, and Plaintiff told the officer that it was his truck. Defendant Officer MARTINEZ then searched the truck and returned to the police vehicle. He asked Plaintiff what he had on the console inside the truck. Plaintiff replied that he did not have anything on the console, and Defendant Officer MARTINEZ removed Plaintiff from the rear of the police vehicle. Defendant Officer MARTINEZ bent Plaintiff head-first over the hood of the police vehicle and unbuckled Plaintiff's belt and pants.

85.     Defendant Officer MARTINEZ then pulled Plaintiff's pants and boxer shorts down near his knees. Defendant Officer MARTINEZ stood behind Plaintiff and put a forearm against the back of Plaintiff's neck, holding Plaintiff's head to the hood of the patrol vehicle. Defendant Officer MARTINEZ kicked Plaintiff's legs apart and reached with his free hand around the front of Plaintiff's body and cupped Plaintiff's testicles in his hand. Defendant Officer MARTINEZ pushed Plaintiff's testicles back between Plaintiff's legs and made rude comments to Plaintiff, such as calling Plaintiff a "punk." Plaintiff repeatedly denied possessing any contraband.

86.     Defendant Officer MARTINEZ then kicked Plaintiff's legs further apart and ran his free hand between Plaintiff's testicles and the crack between Plaintiff's buttocks. The search revealed no contraband, but Defendant Officer MARTINEZ told Plaintiff that he was going to jail. Defendant Officer MARTINEZ pulled Plaintiff up and walked him to the driver's side rear door of the patrol vehicle. Defendant Officer MARTINEZ yanked Plaintiff's pants partway up and pushed Plaintiff inside the patrol vehicle.

87.     Defendant Officer MARTINEZ searched Plaintiff's truck again and returned to the patrol vehicle. Defendant Officer MARTINEZ told Plaintiff that Plaintiff's truck was going to be towed and told Plaintiff that he possessed cocaine. Plaintiff asked to see the cocaine he allegedly possessed, and Defendant Officer MARTINEZ told him to "just shut up." Plaintiff was then transported to Oakland City Jail.

88.     Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause, pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

## FACTUAL ALLEGATIONS REGARDING SHERMAN DUNN

89.     On the night of June 27, 2006, Defendant Officers M. MILLER and C. JOHNSON stopped and detained Plaintiff SHERMAN DUNN on Mead Street near the intersection of San Pablo Avenue in Oakland, California. Defendant Officer MILLER handcuffed Plaintiff while Plaintiff asked the officers why they had stopped him. Plaintiff DUNN incorrectly believed he had a warrant for his arrest and ran from Defendant Officer JOHNSON and MILLER while they placed another man in the rear of the patrol vehicle. Plaintiff, who was handcuffed, took this opportunity to flee from the officers.

90.     Plaintiff ran into an auto-body shop located at 2565 West Street. A person who appeared to work at or own the body shop notified police of Plaintiff's location, and several Oakland Police Department officers came into the room where Plaintiff hid. The officers ordered Plaintiff to put his hands up, but Plaintiff told the officers that he was handcuffed and could not comply with the order. Defendant Officer MILLER came into the room with his gun drawn and told the other officers that Plaintiff was handcuffed. The officers yanked Plaintiff to his feet by the handcuffs and then pat-searched him. The officers found no contraband or weapons during the pat-search.

91.     Defendant Officer MILLER, who wore leather gloves, then unbuttoned Plaintiff's pants and Defendant Officer JOHNSON pulled Plaintiff's pants and boxer shorts down. One of the Defendant Officers then lifted Plaintiff's testicles and ran a hand like a knife up the bare crack between Plaintiff's buttocks. No contraband was located during the search, which occurred at a local business where employees of the business and others could clearly observe the officers.

92.     Defendant Officers took Plaintiff to their police car where they ran his name for a warrants check. Plaintiff was surprised to learn that he had no warrant for his arrest. Plaintiff provided the name of his parole agent at the Defendant Officers' request. The Defendant Officers contacted Plaintiff's parole agent and incorrectly told Plaintiff's parole agent that Plaintiff was under the influence of a narcotic. Several other Oakland Police Department Officers arrived at the scene, and one of them, Officer T. Bergeron, identified Plaintiff. Plaintiff was removed from the patrol vehicle and searched again. The second search also revealed no contraband or drugs. Plaintiff was then arrested and transported to jail, along with another person who was detained by the defendant officers.

93.     Plaintiff subsequently filed an Internal Affairs Complaint against the Defendant Officers for their unreasonable strip search of Plaintiff, and the sexual battery committed by the Defendant Officers who touched Plaintiff's naked private parts.

94.     On or about the afternoon of November 28, 2006, about two days after Thanksgiving, Plaintiff DUNN ran from an Oakland Police Department "task force" vehicle, which pursued Plaintiff on 27th Street from near West Street to West Grand Avenue, where Plaintiff DUNN was apprehended by Defendant Officer CRABTREE and several other unknown Defendant Officer DOES in the backyard of a residence. Plaintiff was aware that he had a warrant for violating his parole by "absconding." Police K-9 dog units were used to locate Plaintiff. Plaintiff surrendered to the officers after they told him they would "sic" the dog on him. After Plaintiff surrendered to the officers, the Defendant Officers, including CRABTREE and several Defendant Officer DOES, ordered Plaintiff to lie on the ground in a prone position. Plaintiff complied. Defendant Officers handcuffed Plaintiff and pat-searched him. The pat-search revealed no contraband.

95.     Defendant Officers stood Plaintiff up and conducted a further search while asking Plaintiff repeated questions about the location of drugs, guns and weapons. Plaintiff had no information to respond to the questions.

96.     While searching Plaintiff further, in the backyard of the residence, the defendant officers unbuckled Plaintiff's belt, pulled Plaintiff's pants down, and then pulled Plaintiff's boxer shorts down to his knees, exposing Plaintiff's genitals and buttocks. The officers ordered Plaintiff to

"bend over and cough." When Plaintiff complied with the order, the officers ordered Plaintiff to spread his buttocks with his hands, which were cuffed behind Plaintiff's back. Plaintiff complied with the order and no contraband was located.

97.    Defendant Officers then removed Plaintiff's sweater, so that Plaintiff was completely naked. When this search revealed no contraband, Defendant Officers ordered Plaintiff to kick his shoes off. Defendant Officers searched Plaintiff's shoes and found no contraband. Plaintiff's clothes were put back in place by Defendant Officers, who then ran Plaintiff's name. Defendant Officer CRABTREE told Plaintiff that he had an arrest warrant for violating parole. Defendant Officers then arrested Plaintiff on the warrant.

98.    Plaintiff's girlfriend was nearby waiting for Plaintiff. Defendant Officers inaccurately told her that they arrested Plaintiff for possession of a gun. Plaintiff was transported to the Oakland Police Department following his arrest.

99.    Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches.

## DAMAGES

100.    As a proximate result of Defendants' conduct, Plaintiffs suffered severe and extreme emotional distress, fear, terror, anxiety, humiliation, and loss of their sense of security, dignity, and pride as United States citizens.

101.    Plaintiffs were illegally strip- searched by the defendant officers noted herein without any probable cause or lawful justification. Further, each plaintiff herein, readily recognizable as African-American, was strip searched, in part, because of his race.

102.    The conduct of defendant officers was malicious, wanton, and oppressive. Plaintiffs are therefore entitled to an award of punitive damages against said defendant police officers.

103.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of all attorney's fees incurred in relation to this action for violation of their civil rights

FIRST CAUSE OF ACTION
(42 U.S.C. Section 1983)
(Against all individually named Defendant Officers and DOES 1-40 named in their individual capacity)

104.    Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 103 of this Complaint.

105.    In doing the acts complained of herein, each Defendant Officer named in their individual capacities, inclusive, and/or each of them, acted under color of law to deprive Plaintiffs of certain constitutionally protected rights, including, but not limited to:

a.    The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b.    The right to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

SECOND CAUSE OF ACTION
(42 U.S.C. section 1983)
(Against Defendants TUCKER, CITY OF OAKLAND, DOES 41-50)

106.    Plaintiffs hereby reallege and incorporate by reference herein paragraphs 1 through 105 of this Complaint.

107.    As against Defendant CITY, TUCKER, and/or DOES 41-50 in his/their capacity as official policy-maker(s) for the CITY OF OAKLAND, Plaintiffs further allege that the acts and/or omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of the CITY OF OAKLAND Police Department tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens.

108.    Plaintiffs are further informed and believe and thereon allege that the acts and omissions alleged herein are the direct and proximate result of the deliberate indifference of Defendants CITY, TUCKER, DOES 41-50, and each of them, to repeated acts of police misconduct, including intrusive, humiliating, public strip searches without probable or reasonable suspicion of criminal wrongdoing, which were tacitly authorized, encouraged or condoned by the Defendant CITY, TUCKER, DOES 41-50, and each of them.

109.    The injuries and damages to Plaintiffs as alleged herein were the foreseeable and proximate result of said customs, policies, patterns and/or practices of Defendant CITY, TUCKER, DOES 41-50, and each of them.

110.    Plaintiffs are further informed and believe and thereon allege that the damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training, supervision and/or discipline of members of the Defendant OAKLAND Police Department.

111.    Plaintiffs are further informed and believe and upon such information and belief allege that Plaintiffs' damages and injuries were caused by customs, policies, patterns or practices of Defendant CITY, TUCKER, DOES 41-50, and each of them, of deliberate indifference in the training, supervision and/or discipline of each individually named Defendant Officer and DOES 1-40, and/or each of them.

112.    The aforementioned customs, policies or practices of Defendant CITY, TUCKER, DOES 41-50, and each of them, resulted in the deprivation of Plaintiffs' constitutional rights including, but not limited to, the following:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

The right to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

113.    Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

THIRD CAUSE OF ACTION
(Assault and Battery)
(Plaintiffs SMITH and ANETENEH against Defendant Officers KOSTER, BROWN, FRAZIER, HOLTON, DOES 6-8)

114.    Plaintiffs SMITH and ANETENEH realleges and incorporates by reference herein paragraphs 1 through 113 of this Complaint.

115.    Defendant Officers KOSTER, BROWN, FRAZIER, HOLTON, and DOES 6 – 8,, inclusive, placed Plaintiffs in immediate fear of death, sexual battery, and severe bodily harm, without any just provocation or cause.

116.    These defendants' conduct was neither privileged nor justified under statute or common law.

117.    As a proximate result of defendants' conduct, Plaintiffs suffered damages as hereinafter set forth.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

FOURTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)
(Plaintiffs SMITH and ANETENEH against Defendant Officers KOSTER, BROWN, FRAZIER, HOLTON, DOES 6-8)

118.    Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 117 of this Complaint.

119.    The conduct of Defendant Officer DOES 1 and 2, inclusive, as set forth herein, was extreme and outrageous and beyond the scope of conduct which should be tolerated by citizens in a democratic and civilized society. Defendants committed these extreme and outrageous acts with the intent to inflict severe mental and emotional distress upon Plaintiff.

120.    As a proximate result of Defendants' willful, intentional and malicious conduct plaintiff suffered severe and extreme mental and emotional distress. Therefore, Plaintiff is entitled to an award of punitive damages as against said defendants. Plaintiff has suffered damages as hereinafter set forth.

WHEREFORE, Plaintiff pray for relief as hereinafter set forth.

## FIFTH CAUSE OF ACTION
### (Violation of Civil Code Section 51.7)
(Plaintiffs SMITH and ANETENEH against Defendant Officers KOSTER, BROWN, FRAZIER, HOLTON, DOES 6-8)

121.    Plaintiffs reallege and incorporate by reference  herein paragraphs 1 through 120 of this complaint.

122.    Plaintiffs are informed and believes and thereon allege that the conduct of Defendant Officers KOSTER, BROWN, FRAZIER, HOLTON, DOES 6-8 , inclusive, as described herein, was motivated by racial prejudice against Plaintiffs. Plaintiffs are and were readily recognizable as African-American. In engaging in such conduct, Defendants violated Plaintiffs' rights under California Civil Code Section 51.7 to be free from violence, or intimidation by threat of violence committed against them because of their race.

123.    Under the provisions of California Civil Code Section 52(b), Defendants are liable for each violation of Civil Code Section 51.7 for punitive damages, an additional $25,000.00 penalty, and for reasonable attorney's fees.

124.    As a proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages as hereinafter set forth.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### SIXTH CAUSE OF ACTION
(Violation of Civil Code Section 52.1)
(Plaintiffs SMITH and ANETENEH against Defendant Officers KOSTER, BROWN, FRAZIER, HOLTON, DOES 6-8)

125.    Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 124 of this Complaint.

126.    The conduct of Defendant Officers KOSTER, BROWN, FRAZIER, HOLTON, DOES 6-8 , inclusive, as described herein, acting in the course and scope of their employment for Defendant CITY, violated California Civil Code Section 52.1, in that they interfered with Plaintiffs' exercise and enjoyment of their civil rights and failed to make a proper or reasonable search of Plaintiffs BROWN and ANETENEH.

127.    As a direct and proximate result of Defendants' violation of Civil Code Section 52.1, Plaintiffs BROWN andd MILLER suffered violation of their constitutional rights, and suffered damages as set forth herein.

128.    Since this conduct occurred in the course and scope of their employment, Defendant CITY is therefore liable to Plaintiffs pursuant to respondeat superior.

129.    Plaintiffs are entitled to injunctive relief and an award of their reasonable attorney's fees pursuant to Civil Code Section 52.1(h).

WHEREFORE, Plaintiffs pray for relief, as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
(Negligence)
(Plaintiffs SMITH and ANETENEH against  Defendants TUCKER, DOES 41-50, and Defendant Officers KOSTER, BROWN, FRAZIER, HOLTON, DOES 6-8 )

130. Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 129 of this complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

131. At all times herein mentioned, Defendant Officers KOSTER, BROWN, FRAZIER, HOLTON, DOES 6-8, inclusive, were subject to a duty of care to avoid causing unnecessary physical harm and distress to persons through the training of police officers in making proper and reasonable searches of people, and in police officers making proper and reasonable searches of people. The wrongful conduct of Defendants, as set forth herein, did not comply with the standard of care to be exercised by reasonable persons, proximately causing plaintiffs BROWN and ANETENEH to suffer injuries and damages as set forth herein. Pursuant to Government Code Section 815.2(a), Defendant CITY is vicariously liable to Plaintiffs for their injuries and damages suffered as alleged herein, incurred as a proximate result of the aforementioned wrongful conduct of Defendants.

132. As a proximate result of Defendants' negligent conduct, Plaintiffs suffered severe physical injury, severe emotional and mental distress, injury having a traumatic effect on Plaintiffs' emotional tranquility, and damages.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### JURY DEMAND

133. Plaintiffs hereby demand a jury trial in this action.

### PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1. For general damages in a sum of $10,000,000.00;

2. For special damages in a sum according to proof;

3. For punitive damages in a sum according to proof;

4. For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;

5.     For injunctive relief enjoining Defendant CITY OF OAKLAND from authorizing, allowing, or ratifying the practice by any police officer employee of Defendant CITY from conducting  unlawful strip searches against persons, and requiring Defendants to implement lawful training and policies, pursuant to California Civil Code Section 52.1;

6.     For violation of California Civil Code Sections 52 and 52.1, statutory damages, and reasonable attorney's fees;

7.     For violation of California Civil Code Section 52(b), punitive damages against Defendant police officers, $25,000.00 for each offense and reasonable attorney's fees

8.     For cost of suit herein incurred; and

9.     For such other and further relief as the Court deems just and proper.

Dated: December 11, 2007　　　　　　　　　**The Law Offices of John L. Burris**

/s/ John L. Burris
John L. Burris, Esq.
Attorney for Plaintiffs

Dated: December 11, 2007　　　　　　　　　**Haddad & Sherwin**

/s/ Michael J. Haddad
Michael J. Haddad, Esq.
Attorney for Plaintiffs