**EXHIBIT 1**


JOHN L. BURRIS, Esq./ State Bar #69888
BENJAMIN NISENBAUM, Esq./State Bar #222173
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882

Attorneys for Plaintiffs

ORIGINAL FILED
AUG - 1 2005
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

E-filing     ADR

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DARNELL FOSTER, individually; RAFAEL DUARTE, individually,

Plaintiffs,

vs.

CITY OF OAKLAND, a municipal corporation; RICHARD WORD, in his capacity as Chief of Police for the CITY OF OAKLAND; J. FESTAG, individually and in his capacity as a police officer for the CITY OF OAKLAND; and, DOES 1-25, inclusive,

Defendants.
_____/

Case No. C05-03110 - TEH

**COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS. JURY TRIAL DEMANDED**

## JURISDICTION

1.  This action arises under Title 42 of the United States Code, Section 1983. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343. The unlawful acts and practices alleged herein occurred in the County of Alameda, California, which is within this judicial district.

PARTIES

2. Plaintiff herein, DARNELL FOSTER ("FOSTER"), is readily recognizable as an African-American male and was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

3. Plaintiff herein, RAFAEL DUARTE ("DUARTE"), is readily recognizable as an Hispanic-American was at all times herein mentioned a citizen of the United States residing in Alameda County in California.

4. Defendant City of Oakland ("CITY") is a municipal corporation, duly organized and existing under the laws of the State of California. The City operates under its authority the Oakland Police Department.

5. At all times mentioned herein, Defendant RICHARD WORD was employed by Defendant CITY as Chief of Police for the Defendant CITY. He is being sued in his official capacity as Chief of Police for the City.

6. At all times mentioned herein, Defendant officer J. FESTAG ("FESTAG") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City.

7. Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 25, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of DOES 1-25, inclusive, when they have been ascertained.

8. In engaging in the conduct described herein, Defendant police officers acted under the color of law and in the course and scope of their employment with the City. In engaging in the conduct described herein, Defendant police officers exceeded the authority vested in them as police officers under the United States and California Constitutions and as police officers employed by Defendant CITY.

## STATEMENT OF FACTS

### FACTUAL ALLEGATIONS REGARDING PLAINTIFF DARNELL FOSTER

9. On February 27, 2004, at around 3 p.m., Defendant Officer FESTAG stopped Plaintiff FOSTER in front of a small market, the "School Market", located near the corner of School Street and Pleitner Avenue in Oakland, Caifornia.

10. Plaintiff FOSTER lived in Carson City, Nevada at the time, but was visiting friends who lived in Oakland. Plaintiff FOSTER had purchased two Black and Mild cigars at the School Market shortly before Defendant Officer FESTAG and one other unknown Oakland Police Officer DOE stopped him. He possessed no contraband and was not engaged in any illegal activity whatsoever. Defendant Officers stopped Plaintiff FOSTER as he walked out of the School Market and asked him for his identification. Plaintiff FOSTER showed the officer his identification. The officers then asked him whether he was on probation or parole. Plaintiff FOSTER honestly replied that he was on probation. In fact, Plaintiff FOSTER, only two months remained of the five year felony unsupervised probation sentence for possession for sale of marijuana. Plaintiff FOSTER had served his probation sentence without incurring a single violation. Plaintiff FOSTER told Defendant Officer FESTAG that he had only two months remaining on his probation.

11. Defendant Officer FESTAG handcuffed Plaintiff FOSTER without explanation and escorted him to the back of his patrol vehicle, which was parked in front of the School Market. Defendant Officer FESTAG forced Plaintiff FOSTER against the back of the patrol vehicle and ordered him to spread his legs. Defendant Officer FESTAG searched Plaintiff FOSTER's pockets and found $22. Defendant Officer FESTAG told Plaintiff FOSTER that the $22 would be confiscated. Even though Plaintiff FOSTER had committed no crime and was not involved in any manner of illegal activity, Defendant Officer FESTAG informed Plaintiff FOSTER that the $22 found in Plaintiff FOSTER's pocket was proceeds of narcotics sales. Defendant Officer FESTAG claimed that Plaintiff FOSTER was engaged in narcotics sales. He handcuffed Plaintiff FOSTER and placed him in the rear of the police vehicle.

12. The unknown Officer DOE ran Plaintiff FOSTER's name for a warrant check. The search revealed no warrants for Plaintiff FOSTER. Defendant Officer FESTAG searched the area

around the market and located no evidence of any illegal activity relating to Plaintiff FOSTER. In spite of the circumstances, which overwhelmingly indicated that Plaintiff FOSTER had not committed any crime, Defendant Officer FESTAG maliciously told Plaintiff FOSTER that he was going to violate his probation. Defendant Officer FESTAG told Plaintiff FOSTER, "I think you're holding out on me," even though there was no basis to believe that Plaintiff FOSTER was engaged in illegal activity.

13. Defendant Officer FESTAG removed Plaintiff FOSTER, still handcuffed, from the back of the patrol vehicle and bent him over the hood of the police car. Defendant Officer FESTAG opened the patrol vehicle's trunk and put on a purple latex glove. He then returned to Plaintiff FOSTER and ordered him to bend over the hood of the patrol vehicle. Plaintiff FOSTER stood in the gutter, between the sidewalk and the police car, handcuffed, while Defendant Officer FESTAG yanked Plaintiff FOSTER's gray sweat pants down to his knees. Defendant Officer FESTAG then yanked Plaintiff FOSTER's boxer shorts down to his knees, exposing Plaintiff FOSTER's genitalia. Humiliated and stunned, Plaintiff FOSTER felt Defendant Officer FESTAG's hands reach under his testicles. Consistent with Plaintiff FOSTER's innocence, this offensive sexual battery showed that Plaintiff FOSTER possessed no contraband at all.

14. To Plaintiff's shock and disbelief, Defendant Officer FESTAG told Plaintiff FOSTER "I'm going to do a butt-crack search, see if you got crack in your butt-crack." Plaintiff FOSTER was forced to comply with Defendant Officer FESTAG's outrageous conduct. Defendant Officer FESTAG spread Plaintiff FOSTER's butt-cheeks with his right hand and exposed the anus. The unknown Officer DOE was also present, and both officers inspected Plaintiff FOSTER's anus. Predictably, this unwarranted intrusive search failed to reveal any contraband.

15. Defendant Officers pulled Plaintiff's underwear and sweat pants up and put him back in the rear of the patrol vehicle. Despite the complete lack of evidence, Defendant Officer FESTAG told Plaintiff that he was going to take him to jail for "loitering with the intent to sell narcotics." Plaintiff FOSTER denied loitering and told the officers that he had just gone to the store, and was not involved in any drug activity.

16. Defendant Officer FESTAG drove about two blocks away and stopped the patrol vehicle near the corner of Texas and Maple Streets. One of the Defendant Officers asked Plaintiff FOSTER if he knew anyone who sold marijuana. When Plaintiff FOSTER said "no," the officers asked him to make an undercover drug purchase. After Plaintiff FOSTER refused to become a snitch for the officers, Defendant Officer FESTAG told Plaintiff FOSTER "Help me so I can help you."

17. Plaintiff FOSTER again asked the officers what he had done, and they again claimed that he had sold narcotics. When Plaintiff FOSTER truthfully stated that he had not sold narcotics, the officers insisted that Plaintiff FOSTER sign a citation for violating an Oakland Municipal Ordinance prohibiting loitering with the intent to sell narcotics. Plaintiff FOSTER signed the citation and Defendant Officer released him. Defendant Officers kept Plaintiff FOSTER handcuffed throughout the incident, which lasted nearly half an hour.

18. After being released, Plaintiff FOSTER returned to the same store, "School Market" and spoke with the store clerk. The clerk told Plaintiff FOSTER that one of the officers had come in and asked him how long Plaintiff FOSTER had been in the store. The clerk stated that he had told the officer Mr. FOSTER had come into the store just before the police came.

19. Plaintiff FOSTER returned home to Carson City, Nevada. Several months later, in May, Plaintiff FOSTER received a Notice to Appear in Criminal court in Oakland in September 2004 on the citation issued by Defendant Officer FESTAG. Plaintiff FOSTER called the Oakland Police Department Internal Affairs Division and filed an Internal Affairs complaint against Defendant Officer FESTAG sometime around July 2004. In order to defend against the false loitering charges, Plaintiff FOSTER traveled from Nevada to Oakland and appeared in court in Oakland on September 24, 2004. The charge against him was dismissed when neither Officer FESTAG, nor any other officer, appeared in court to substantiate the false allegation against Plaintiff FOSTER.

20. Plaintiff FOSTER alleges, on information and belief, that defendant officers had insufficient information, and no particularized facts, to support their stop, detention, and search of Plaintiff.

21.  The detention, search, and arrest of Plaintiff FOSTER described herein was done without any just provocation or cause, proximately causing Plaintiff FOSTER's injuries and resulting damages.

22.  Plaintiff FOSTER alleges on information and belief that defendant officers performed the public, intrusive anal-cavity search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches

### FACTUAL ALLEGATIONS REGARDING PLAINTIFF RAFAEL DUARTE

23.  On the afternoon of March 9, 2005, Plaintiff RAFAEL DUARTE was a passenger in a car driven by a friend of his, Deandre Wash. Mr. Wash drove a late-80s model Toyota Supra. Two all-black Oakland Police vehicles, believed to be "task-force" vehicles, cut the Supra off without warning, forcing the car to a sudden stop on Baker Street between, between 62nd and 63rd Street in Oakland.

24.  Although the Officers gave no orders to Plaintiff or Mr. Wash, at least one Defendant Officer DOE opened the passenger side door and yanked Plaintiff DUARTE from the vehicle. Although Plaintiff DUARTE had committed no crime, the DOE police officer forced him against the Toyota's hood and handcuffed him. The DOE police officer then walked Plaintiff DUARTE to the front-side of a nearby house. Several other unknown Defendant Officer DOES were also present at the scene. The DOE police officer pat-searched Plaintiff DUARTE several times and then searched him thoroughly. The search yielded no contraband.

26.  Plaintiff DUARTE protested, stating that he had not committed any crime and was not in possession of any contraband. Even though the searches performed by Officer DOE confirmed that Plaintiff DUARTE had committed no crime and possessed no contraband, one other Defendant Officer DOE 2 told the first Officer DOE that he thought he had seen Plaintiff DUARTE "stuff something in his pants."

27.  Defendant Officers pulled Plaintiff DUARTE's pants down and ordered him to bend over. To Plaintiff DUARTE's shock and humiliation, one of the Defendant Officer DOES spread Plaintiff DUARTE's butt-cheeks exposing his anus. The search proved fruitless. Plaintiff DUARTE possessed no contraband anywhere.

28.  Plaintiff DUARTE was placed in the rear of the police vehicle. Defendant Officers then removed Plaintiff's friend, Mr. Wash, from the vehicle and performed the same type of anal-cavity search on Mr. WASH. That search also yielded no contraband whatsoever. A crowd of people had gathered during the search, and Plaintiff DUARTE was acquainted with some of the people who witnessed the outrageous anal-cavity search of Plaintiff and his friend, Mr. Wash.

29.  Plaintiff DUARTE was transported to Oakland City Jail where he was cited out after about two hours in custody. Plaintiff DUARTE told the officer who took his fingerprints about the anal-cavity search and was told by the officer to file an Internal Affairs complaint. He was also told that his civil rights had been violated and that he should file a lawsuit. No charges were ever filed against Plaintiff DUARTE.

30. Plaintiff DUARTE alleges, on information and belief, that defendant officers had insufficient information, and no particularized facts, to support their stop, detention, and search of Plaintiff.

31.  The detention, search, and arrest of Plaintiff DUARTE described herein was done without any just provocation or cause, proximately causing Plaintiff DUARTE's injuries and resulting damages.

32.  Plaintiff DUARTE alleges on information and belief that defendant officers performed the public, intrusive anal-cavity search without probable or reasonable cause pursuant to an official or de facto CITY OF OAKLAND policy condoning and/or ratifying such illegal searches

DAMAGES

33.  As a proximate result of Defendants' conduct, Plaintiffs suffered severe and extreme emotional distress, fear, terror, anxiety, humiliation, and loss of their sense of security, dignity, and pride as United States citizens.

34.  Plaintiffs were assaulted, detained, handcuffed, illegally searched in the anus in public, and falsely arrested by the defendant officers noted herein without any just provocation or probable cause. Plaintiff FOSTER defended against the false charge of loitering and traveled from Nevada to Oakland to make a court appearance at which Defendant Officer FESTAG did not bother to appear.

35. The conduct of defendant officers was malicious, wanton, and oppressive. Plaintiffs are therefore entitled to an award of punitive damages against said defendant police officers.

36. Plaintiffs found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiffs are therefore entitled to an award of all attorney's fees incurred in relation to this action for violation of their civil rights.

### FIRST CAUSE OF ACTION
(42 U.S.C. Section 1983)
(Against Defendants FESTAG and DOES 1-10)

37. Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 36 of this Complaint.

38. In doing the acts complained of herein, Defendants FESTAG and DOES 1-10, inclusive, and/or each of them, acted under color of law to deprive Plaintiffs of certain constitutionally protected rights, including, but not limited to:

    a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

    b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

    c. The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

    d. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and/or,

    e. The right to be free from interference within the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution;

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
(42 U.S.C. section 1983)
(Against Defendants CITY, RICHARD WORD, and DOES 11-25)

39. Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 38 of this Complaint.

40. Plaintiffs are informed and believe and thereon allege that high ranking City of Oakland officials, including high ranking police supervisors, such as Defendant Richard WORD, DOES 11 through 25, and/or each of them, knew and/or reasonably should have known about repeated acts of misconduct by Defendants FESTAG and DOES 1-10, and/or each of them, including illegal public strip search and anal-cavity searches without any reasonable suspicion of criminal activity to justify the complained of searches.

41. Despite having such notice, Plaintiffs are informed and believe and thereon allege that Defendants WORD, DOES 11-25, and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by said officers.

42. Plaintiffs are further informed and believe and thereon allege that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by Defendants FESTAG and DOES 1-10, and/or each of them, Defendant WORD, DOES 11-25, and/or each of them, encouraged these officers to continue their course of misconduct, resulting in the violation of Plaintiffs' rights as alleged herein.

43. The aforementioned acts and/or omissions and/or deliberate indifference by high ranking City of Oakland officials, including high ranking City of Oakland Police Department supervisors, Defendants WORD, DOES 11-25, and each of them resulted in the deprivation of Plaintffs' constitutional rights including, but not limited to, the following:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

c. The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

d. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and/or,

e. The right to be free from interference within the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution;

44. Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
### (42 U.S.C. section 1983)
### (Against Defendant CITY OF OAKLAND)

45. Plaintiffs hereby reallege and incorporate by reference herein paragraphs 1 through 44 of this Complaint.

46. As against Defendant CITY, Defendant WORD and/or DOES 11-25 in his/their capacity as official policy-maker(s) for the CITY OF OAKLAND, Plaintiffs further allege that the acts and/or omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of the CITY OF OAKLAND Police Department tantamount to a

custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens.

47. Plaintiffs are further informed and believe and thereon allege that the acts and omissions alleged herein are the direct and proximate result of the deliberate indifference of Defendants CITY, WORD, DOES 11-25, and each of them, to repeated acts of police misconduct, including intrusive, humiliating, public anal cavity searches without probable or reasonable suspicion of criminal wrongdoing, which were tacitly authorized, encouraged or condoned by the Defendant CITY, Defendant WORD, DOES 11-25, and each of them.

48. The injuries and damages to Plaintiffs as alleged herein were the foreseeable and proximate result of said customs, policies, patterns and/or practices of Defendant CITY, Defendant WORD, DOES 11-25, and each of them.

49. Plaintiffs are further informed and believe and thereon allege that the damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training, supervision and/or discipline of members of the Defendant OAKLAND Police Department.

50. Plaintiffs are further informed and believe and upon such information and belief allege that Plaintiffs' damages and injuries were caused by customs, policies, patterns or practices of Defendant CITY, Defendant WORD, DOES 11-25, and each of them, of deliberate indifference in the training, supervision and/or discipline of Defendants FESTAG and DOES 1-10, and/or each of them.

51. The aforementioned customs, policies or practices of Defendant CITY, Defendant WORD, DOES 11-25, and each of them, resulted in the deprivation of Plaintiffs' constitutional rights including, but not limited to, the following:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

c. The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

d. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and/or,

e. The right to be free from interference within the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution.

52. Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## JURY DEMAND

53. Plaintiffs hereby demand a jury trial in this action.

///
///

## PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1. For general damages in a sum of $1,000,000.00;
2. For special damages in a sum according to proof;
3. For punitive damages in a sum according to proof;
4. For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;
5. For cost of suit herein incurred; and
6. For such other and further relief as the Court deems just and proper.

Dated: July 25, 2005

**The Law Offices of John L. Burris**

_____
John L. Burris, Esq.
Attorney for Plaintiffs