UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SMITH, KIRBY BRADSHAW, SPENCER LUCAS, et al., <br><br> Plaintiff(s), <br><br> vs. <br><br> CITY OF OAKLAND, et al., <br><br> Defendant(s). | No. 07-6298 MHP <br><br> **ORDER RE** <br> **PUNITIVE** <br> **DAMAGES** <br> **(Bradshaw and Lucas)** |

The purpose of punitive damages is "deterrence and retribution". *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001). The Supreme Court laid out the criteria by which an award of punitive damages should be measured in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574-86 (1996). These criteria are generally referred to as the *Gore* factors or guideposts. The jury or judge should consider the following in determining the amount of such an award: 1) the reprehensibility of the conduct; 2) the award should bear a reasonable relationship to the harm suffered or to the compensatory damages; and 3) the award should be comparable to civil penalties or punitive damages imposed in comparable cases. Again the Supreme Court reiterated in *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416-17 (2003)(quoting *Gore*, 517 U.S. at 568), that the purpose of punitive damages is "punishing unlawful conduct and deterring its repetition." Punitive damages should neither be penurious to the defendant nor should they provide a windfall to the plaintiff.

The Proceedings and Submissions in This Case

This court has already determined that an award of punitive damages is justified in this action. The court awarded total actual damages in the amount of $105,025 to plaintiff Lucas and $100,025 to plaintiff Bradshaw. These are the amounts the court should look to in determining the second *Gore* factor. The court has also addressed the reprehensibility of the strip searches in its Findings of Fact and Conclusions of law filed August 4, 2011. The court then asked the parties to conduct further discovery on defendant's financial condition and submit the pertinent evidence discovered along with their briefing on the punitive damages issues. The submissions have been filed, the court has reviewed them and enters this order on the remaining issue as to these two plaintiffs.

Plaintiffs argue in favor of awards of punitive damages in the amounts of $200,000 and $100,000 to Lucas and Bradshaw, respectively. Defendant Mayer argues that punitive damages should not be awarded and would not serve the purposes of deterrence in this case. Defendant Mayer has submitted evidence of his financial condition and his deposition on this matter has been taken. Mayer is no longer an officer of the Oakland Police Department, having taken disability retirement since the incident and trial in this case. He attributes his disability to this litigation and the experience of the trial. Since the trial he has received medical treatment for severe anxiety, depression and post-traumatic stress disorder. He presently receives disability payments and his medical benefits have been terminated, although he continues to require treatment.

The court reviewed the parties' submissions regarding defendant Mayer's financial condition, including Mayer's deposition testimony. With disability payments, rent from property rental and workers' compensation, Mayer will receive approximately $79,000 per annum for the next three years after which his workers' compensation payments will terminate. Then, absent any further employment, his per annum income will be slightly over $61,000. He has as of the time of submissions approximately $104,500 in bank accounts. He has an outstanding mortgage and monthly mortgage payments of approximately $17,400 per annum plus another liability of over $13,000 as of June 2011 on one of his two motorcycles that have any value. It appears that Mayer

2

can pursue some type of employment even though he may not return to law enforcement work without suffering the loss of his disability retirement. He will be forty-one years old this month. Mayer is not impecunious; he also is not wealthy.

The court's August 4 order discusses the nature of the conduct giving rise to this action. The officer's conduct was deliberate and in callous disregard of plaintiffs' right to be free of unreasonable seizures and searches and prolonged detention. The conduct was demeaning to the plaintiffs and they well described the humiliation they experienced. In his deposition Mayer expresses his disgust at being found liable and having to pay damages to "a parolee he's a killer", referring to Lucas. Sherwin Decl. Ex. A, Mayer Depo.51:12-54:20. He repeats this opinion several times even though he acknowledges that Lucas was never convicted of any type of homicide.[1] This attitude is of grave concern, for it reflects an attitude by a member of law enforcement that persons that he believes have been investigated for murder are deemed and treated like killers even though they have never been convicted or even charged with murder or any lesser offense such as manslaughter. The attitude also expresses a generalized attitude toward parolees. Of course there are legitimate concerns about parolees because they are subject to conditions that are intended to enforce law-abiding behavior. However, parolees are not fungible and law enforcement officers must be cognizant of this.

While the court is concerned about Mayer's attitude, it recognizes in dealing with the reprehensibility of the officer's conduct that plaintiffs, although subjected to public humiliation and suffering emotional pain, did not incur physical pain and were not beaten or injured as is frequently the case when punitive damages are considered.

*Gore*'s Third Prong: Comparable Penalties and Cases

Looking to other civil penalties and comparable cases informs the court as follows. This case is evaluated under section 1983 of Title 42 of the United States Codes. There is no claim under California Civil Code section 52.1. However, that statute, while not directly on point, is sufficiently analogous to provide some limited guidance because it reflects the California legislature's approval

3

of penalties for violations of civil rights.   Under section 52.1 civil penalties in the amount of $25,000 may be recovered.

Excessive force cases cited to this court by plaintiffs range from persons who died of their injuries as a result of such force, to persons with serious to minor injuries, to others who have suffered unjustified incarceration and eviction from their homes.  Awards in those cases range as follows: *Smith v. City of Oakland*, 538 F.Supp.2d 1217 (N.D.Cal.2008), aff'd, 379 Fed.Appx.647 (9th Cir.2009)(unlawful incarceration and eviction; economic and non-economic damages for incarcerated plaintiff of $5,000,000 remitted to $3,000,000, punitives of $100,000); *Estate of Moreland v. Dieter*, 395 F.3d 747 (7th Cir.2005)(injuries resulting in death - $29 milllion general damages; punitives per defendant of $15 million and $12.5 million); *Davis v. Rennie*, 264 F. 3d 86 (1st Cir.2001)(mental patient suffering serious injuries - $100,000 general damages; punitives $500,000 each of 2 defendants and $250,000 3rd defendant); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553 (1st Cir.1989)(very serious injuries, paraplegic - $4.5 million general damages; punitives $225,000 each of 2 defendants, $125,000 3rd defendant); *Nydam v. Lennerton*,   948 F.2d 808 (1st Cir.1991)(serious injuries - general damages $65,000; punitives $100,000 per each of 2 defendants); *Casillas-Diaz v. Palau*, 463 F.3d 77 (1st Cir.2006)(compensatory damages totalling  $300,000 for injuries to two plaintiffs one of whom later committed suicide; punitives $250,000 each defendant for a total of $1,000,000); *White v. McKinley*, 605 F.3d 525 (8th Cir.2010)(bizarre case involving wife having affair with defendant officer and false charges against plaintiff - economic and non-economic damages $14 million; punitives $1million); *Gregory v. Shelby Co. Tenn.*, 220 F.3d 433 (6th Cir.2000)(jail inmate attacked by inmate, suffered fatal injuries - compensatory damages $778,000; punitives $2.2 million); *O'Neill v. Kreminski*, 839 F.2d 9 (2nd Cir.1988)(compensatory damages for injuries, physical and emotional pain - $80,000; punitives $185,000 against 2 officers); *Stokes v. Delacambre*, 710 F.2d 1120 (5th Cir.1983)(compensatory damages for physical injuries - $70,000; punitives $205,000 against one officer and $105,000 against 2d officer).

Defendants have not responded with comparable cases, arguing instead that punitive damages are not warranted.

4

1  The court's review of cases in this and other districts is also instructive. In this district a
2  plaintiff who was the subject of an "unnecessary carotid hold" by the defendant who then colluded
3  with a "fellow officer to fabricate an untruthful story" was awarded $125,000 in economic and non-
4  economic damages and punitive damages of $30,000 against the first officer and $20,000 against the
5  second officer. *Knapp v. City of Oakland*, 647 F.Supp.2d 1129, 1171 (N.D.Cal. 2009).

6  In the Central District of California, a plaintiff jail prisoner who had been subjected to two
7  strip searches and suffered painful injuries when his "penis piercing was ripped out" during one of
8  the searches, was awarded $3,000 in compensatory damages and $2,000 in punitive damages
9  imposed jointly and severally against multiple defendants. In another case in this Circuit, *Bonner v.*
10  *Normandy Park,* No.C 07-062, 2009 WL 279070, at *7 (W.D.Wash.Feb. 2, 2009), the jury awarded
11  punitive damages of $25,000 on a compensatory damage award of $25,000, where the plaintiff
12  suffered physical and emotional pain from unlawful tasering. The *Bonner* court cited comparable
13  cases in evaluating the third *Gore* factor thus: "[s]ee, e.g., *Frunz v, City of Tacoma*, 468 F.3d 1141,
14  1144 (9th Cir.2006)(affirming a $111,000 punitive damages award by a jury in a §1983 case
15  involving claims for unlawful entry and excessive force); *King v. Turner*, 2006 WL 4911278
16  (D.Minn.) (jury awarded $15,000 in punitive damages to a §1983 olaintiff who claimed deputy used
17  excessive force after grabbing plaintiff's arm); *Omelogu v. Canizales*, 2006 WL 4990833
18  (N.D.Ill.)(jury awarded $250,000 in punitive damages to §1983 plaintiff who was dragged out of his
19  dorm room)." *Id*. In a Nevada district court case an in-custody strip search plaintiff was awarded
20  $1,000 in general damages and $3,000 in punitive damages. *See Hill v. Koon*, 732 F.Supp.1076
21  (D.Nev.1990).

22  Canvassing other circuits the court finds that in the Northern District of New York where the
23  plaintiff was awarded $65,000 in compensatory damages for physical and emotional injuries, an
24  award of $200,000 in punitive damages was held sufficiently proportional and not grossly excessive
25  when viewed in the light of comparable cases. *See Lewis v. City of Albany Police Dept*., 547
26  F.Supp.2d 191 (N.D.N.Y.2008), aff'd, 332 Fed.Appx. 641 (2d Cir.), *cert. denied,* 130 S.Ct. 5757
27  (2009). In an Eastern District of New York case one officer who assaulted the plaintiff with his

5

1  baton and two others who stood by and failed to intervene were found liable and assessed $5,000 in
2  compensatory damages and a total of $50,000 in punitive damages against all three officers, or
3  slightly less than $17,000 each. *See Robertson v. Sullivan*, No. 07-CV-1416, 2010 WL 1930658, at
4  *5 (E.D.N.Y. May 12, 2010).  In *Johnson v. City of New York*, No. 05 Civ. 7519(PKC), 2011 WL
5  2693234, at *6 (S.D.N.Y, June 30, 2011), a Southern District of New York jury found that plaintiff
6  had not proven his excessive force and deprivation of liberty claims, but had established his state
7  malicious prosecution claim and awarded him $5,000 in compensatory damages and $15,000 in
8  punitive damages.  The court found this amount was within the range of reasonable awards citing to
9  *Robertson*.

10  In an excessive force case out of the Seventh Circuit where the plaintiff had suffered a
11  fractured wrist and dislocated shoulder and the jury awarded the plaintiff $25,000 in compensatory
12  damages, the district court found after reviewing comparable cases that the punitive damages awards
13  of $250,000 and $500,000 per officer were excessive and remitted them to $50,000 and $100,000,
14  respectively. *See Jones v. Sheahan*, Nos. 99 C 3669, 01 C 1844, 2003 WL 22508171, at *12-21
15  (N.D.Ill. Nov. 4, 2003)(discussing at length the *Gore* factors and comparable cases).

16  Another Northern District of Illinois case decided in 1996 performed a comprehensive
17  review of comparable punitive damages cases including some strip search cases, although the
18  gravamen of plaintiff's claim was an alleged unlawful arrest for drunk driving.  That case, *Grauer v.*
19  *Donovan*, No. 92 C 3186, 1996 WL 82462, at *4-6 (N.D.Ill. Feb. 23, 1996), analyzed a large array
20  of cases within and outside the Seventh Circuit.  The punitive damage awards reviewed involved
21  physical brutality, hitting, punching, slamming detainees to the ground, among other actions
22  resulting in physical injuries.  The range of punitive damages was from $2,000 to $25,000 with a
23  greater award of $50,000 where a death resulted and the officer was involved in a cover up. *Id*.

24  The two strip cases reported in *Grauer* were decided in the Seventh Circuit in the 1980's.
25  *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir.1983), was a class action involving strip
26  searches of females. A punitive damage award of $60,000 to the named plaintiff,  who had been
27  searched in the presence of two male police officers and other jeering observers, was affirmed.[2] The
28

6

1 Seventh Circuit also appeared to "set an upper limit of $6,000 in a punitive damages case against a
2 prison guard who had exceeded [the] scope of a strip search by performing a body cavity search."
3 *Grauer*, at *5 (citing to *McKinley v. Trattles*, 732 F.2d 1320 (7th Cir.1984)).

4     A plaintiff who suffered unlawful false arrest and imprisonment and endured two strip
5 searches was awarded $25,000 in compensatory damages and $55,000 in punitives. *See Brown v.*
6 *Byer*, 870 F.2d 975 (5th Cir.1989). Another strip search plaintiff in a Fifth Circuit case received only
7 nominal damages of $1.00 and was awarded punitive damages of $15,000. The award was affirmed
8 in *William v. Kaufman Co.*, 352 F.3d 994 (5th Cir.2003). This year in a case decided in the Eastern
9 District of North Carolina one dollar nominal damages and $5,000 in punitive damages were
10 awarded for an in-custody strip search that involved sexual misconduct by the officer. *See*
11 *Carrington v. Easley*, No. 5108-CT-3175-FL. 2011 WL 2132850, *4-5 (E.D.N.C. May 25, 2011.

12     With respect to this third *Gore* guidepost the court has done a thorough search of existing
13 cases. Admittedly there may be some this court has not found or cited, but these are enough to
14 inform this court's decision on an appropriate award that meets the guidance of *Gore*.
15 Each case is different. Some reflect searches conducted in jails or similar facilities. Some have
16 been performed in discreet, private or hidden locations; some have involved physical force that has
17 resulted in injuries of varying degrees.

18

19 *Gore*'s First and Second Factors

20     The egregious factors in the case at bar are the public nature of the searches with no attempt
21 to conceal them and conducted in the presence of onlookers. The surrounding circumstances of an
22 unlawful stop, the lack of a justification for a strip search under the conditions at that time, the lack
23 of exigency and the availability of more appropriate settings render these searches flagrant
24 violations of the plaintiffs' rights to be free of unreasonable searches. Just because a parolee has
25 conditions of parole does not justify abuse of that status by law enforcement.

26     Lucas was on parole for a forgery. The type of search performed here bore no reasonable
27 relationship to the grounds for his parole. Bradshaw was to be transported to the jail, approximately

28

7

twenty to thirty blocks away. A pat down search and search for weapons would ordinarily suffice for that purpose. If any strip search was to be conducted, it could and usually would be conducted at the jail before placing him in the general population. Instead, the two were subjected to callous and reckless disregard for their rights and with oppressive, unnecessarily harsh and severe treatment.

The court also recognizes that the plaintiffs did not sustain any physical injuries, only emotional and mental ones, but nonetheless they were severe. The awards of damages already made take this into consideration. The punitive damage award is not compensatory for those injuries. It is to serve as a deterrent to the defendant and a deterrent to other officers. It is also to punish defendant Mayer for his abusive and unconstitutional conduct.

Conclusion

Taking all of the above into consideration, the *Gore* guideposts of reprehensibility and severity of conduct, proportionality, and comparability, and the facts and findings in this case, the court holds that awards of punitive damages of $25,000 to plaintiff Lucas and $15,000 to plaintiff Bradshaw are sufficient to satisfy the purpose of punitive damages, are commensurate with the constitutional violations being redressed and bear a reasonable relationship to the actual damage awards already issued.

The parties shall advise the court within ten (10) days of the date of this order whether they wish the court to enter judgment as to these plaintiffs pursuant to Federal Rule of Civil Procedure 54(b).

IT IS SO ORDERED.

Date: November 3, 2011

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Curiously, at trial defendant Mayer testified that he "had never heard of Spencer Lucas before this incident", "had never seen him before", didn't know he was on parole, and wasn't looking for him.. Sherwin Decl., Ex.A, Mayer Depo 227:20 - 229:4.   Thus, this "information" is after-acquired, but it is troublesome because of the attitude it displays. Furthermore, the record reflects that Lucas had suffered only one felony conviction which was for forgery.  Nothing in the record reflects any conviction for any type of assaultive conduct.

2. *Grauer* characterizes the $60,000 damages in Mary Beth G. as punitive damages. However, a review of that case indicates to this court that this amount was an award for emotional and mental distress damages and since the award appears to be against the City of Chicago and no particular individual defendants are mentioned, this award was likely not a punitive damage award.

*Mary Beth G.* and *Joan W. v. City of Chicago*, 771 F.2d 1020 (7th Cir.1985), are two of a number of cases brought against the City of Chicago for unlawful strip searches of women detainees held in custody and subjected to strip searches pursuant to a policy that was found unlawful.  These two cases recite the emotional and mental distress damage awards issued in many of the cases and the amounts are informative, but are not punitive damage awards.